# GLEASON v. SALT LAKE CITY et al.

No. 5870.   Decided December 31, 1937.   (74 P. 2d 1225.)

1

2

*J. W. Stringfellow, A. H. Hougaard,* and *Bryan P. Leverich,* all of Salt Lake City, for appellant.

*Fisher Harris,* City Atty., *E. R. Christensen,* and *Gerald Irvine,* Asst. City Attys., *Bagley, Judd & Ray,* and *A. H. Nebeker,* all of Salt Lake City, for respondents.

FOLLAND, Chief Justice.

Plaintiff, Rella Gleason, tripped over a fire hose lying across the sidewalk on East Third South street, between Main and State streets, in Salt Lake City, and was injured. She sued Salt Lake City, a municipal corporation, and Auer-

bach Company, a corporation, on grounds of negligence. During the trial plaintiff dismissed her action against the municipal corporation and proceeded against Auerbach Company. The latter defendant, at the close of plaintiff's case, rested without introducing any evidence and moved the court to direct a verdict in its favor. The motion was granted, and plaintiff appeals.

We are not called upon to decide any question respecting the liability of the city. The only question on the appeal is as to the correctness of the court's action in directing the verdict for defendant Auerbach Company and against plaintiff. There is no dispute in the facts.

Defendant company has an elevator in the rear of its store. The elevator pit sometimes accumulated water by leakage from the hydraulic lift and from the surrounding ground, the store being located on an old creek channel. Its superintendent telephoned the Fire Department and requested that the water be pumped from the shaft. Such a condition had existed at other times, and on six or seven prior occasions the Fire Department equipment and men had responded to the call and had pumped the water out. The chief of the Fire Department testified that he directed the master mechanic to take certain equipment, which he desired tested, together with such men as were needed and to pump the water from the elevator shaft. The men and equipment, under the direction of the master mechanic, drove to the rear of Auerbach's store and immediately went to work pumping water. The engine did not work perfectly, so that they were about 45 minutes doing the work which should have been done in a very few minutes.

The men were regular firemen in civil service, were on duty for the city at the time, and were paid their regular salaries by the city. They took orders from the master mechanic, and the master mechanic from the chief. No other person participated in or directed the work. Auerbach Company did not pay anything to any of the firemen or to the city for the services rendered.

For the purpose of priming the pump, the firemen took water through a fire hose from a fire hydrant near the curb on Third South street. The hose was laid from the hydrant across the sidewalk and through an alley to the rear of defendant's store. At about the time the water was turned into the hose, plaintiff, walking easterly on the sidewalk, stumbled over the hose, which had expanded with the pressure of the water. The negligence alleged is the failure to give warning of the presence of the hose. No warning was given other than the mere presence of the hose.

Defendant denied the allegations of the complaint and alleged affirmatively that the injury, if any, was caused by plaintiff's want of ordinary care, and her negligence in failing to keep a lookout for her own safety.

Plaintiff contends defendant is liable for the alleged negligence of the firemen on two grounds: (1) That the city was not an independent contractor nor were its firemen, but that the city firemen were employees of the Auerbach Company in the performance of the work, and therefore that any negligence of the firemen was attributable to the company as their employer. (2) That if the Fire Department be classed as an independent contractor, yet Auerbach Company cannot escape liability because the duty of exercising due care to guard against injury to pedestrians using the sidewalk is a nondelegable duty.

As to the first point the firemen were not employees of the company. The relationship of master and servant is one that arises out of a contract of employment, express or implied, between a master or employer on the one hand, and a servant or employee on the other. 39 C. J. 33. An "express contract" is one expressed in words, while an "implied contract" is one where the mutual intent is manifested by particular acts and attendant circumstances. 28 R. C. L. 667. Here there was no express contract, either oral or written, by which the relationship of master and servant was created. If it existed at all, it

would be because implied from the particular acts of the parties and the circumstances of the situation. We are unable to find any facts from which such a relationship could arise. The men did their work on request of the chief of the Fire Department made to the master mechanic. The firemen who went with the master mechanic acted exclusively under his orders. The equipment belonged to the city. The men were paid by the city and were in regular service as firemen of the city at the time. No one acting for Auerbach Company gave any instructions or directions respecting the work or the manner in which it should be done. All this plaintiff concedes, but she urges the test that it is the right or power of control of the employees that in the last analysis indicates whether or not the relationship is one of master and servant. She contends the company had control of the place of the work, and argues from that that it had the right to control the manner and means of the work. Plaintiff is correct in stating the law, but there is no evidence in the record which tends to prove that the company retained the right to control the operations of pumping. Indeed, all the evidence supports the opposite conclusion, that the work was done and intended to be done by the Fire Department free from any direction or control by Auerbach Company. See note on Independent Contractor, 18 A. L. R. 801.

If a fireman had been injured in the course of the work, could he recover compensation from Auerbach Company? On the record before us we think not. In the recent case of *Weber County-Ogden City Relief Committee* v. *Industrial Commission,* 93 Utah 85, 71 P. 2d 177, 181, this court held that the relationship of master and servant existed between Ogden City and a relief worker, for the purposes of compensation, where the workman was sent to the city by a relief committee and paid for his services out of relief funds furnished by the state and federal governments. The decision turned on the fact that he worked for the city under the direction of its street supervisor. In the opinion it was said:

"In 1 Labatt's Master and Servant (2d Ed.) 56-74, the author discusses the elements generally held as indicative of the relation of master and servant. He refers to (1) exercise of control over the details of the work, (2) payment of compensation, (3) power of appointment, (4) power of dismissal, and (5) for whose benefit the given work was done. He regards the first element as the one which, in the last analysis, must 'always determine what was the essential nature of the relationship between the person who performed the given work and the person for whom it was performed.' The other elements are merely corroborative of the first if the first is shown to be present; and if the first element cannot be shown directly, the other elements are indicative of conditions which imply that control over the worker was in fact exercised by the person declared to be the master."

The right of control and the exercise of such right was a determining factor in fixing the liability of the employer notwithstanding the employee was paid wages by another in *Phelps* v. *Boone,* 62 App. D. C. 308, 67 F. 2d 574, 575. There Boone, a physician, in the Navy Department, was assigned duty at the White House in Washington and furnished an automobile and driver. He used the car and driver to drive himself and friends on a purely personal trip, during the course of which an accident happened through the negligence of the driver. In holding Boone personally liable the court said:

"The latter became pro hac vice the servant of the former and this because for the time being, that is, when the act complained of happened, the driver was under the control of defendant in error and doing the things he was then directed by him to do.

"The usual test in such circumstances, that is to say, the determination of liability for a negligent act on the part of a servant, is the right or the power on the part of the person charged, to command and control the servant in the performance of the causal act at the moment of performance. Under the conditions the employer or master is the person who at the moment has the power of control."

A volunteer fireman was held not to be an employee of the city in *Bingham City Corporation* v. *Industrial Commission,* 66 Utah 390, 243 P. 113, 114, for the reason that such volunteer did not meet the following test:

"The usual test by which to determine whether one person is another's employe is whether the alleged employer possesses the power to control the other person in respect to the services performed by the latter and the power to discharge him for disobedience or misconduct. Under the Workmen's Compensation Act it is also essential that some consideration be in fact paid or payable to the employe."

The court also said:

"In short, the term 'employe' indicates a person hired to work for wages as the employer may direct. This is substantially the same as the definition of the statute above quoted, the essence of which is so far as material here, 'every person in the service of the * * * city * * * under any appointment or contract of hire, express or implied, oral or written,' shall be construed to be an employe, etc. The deceased was not in the service of the city under any appointment or contract of hire or at all. There were no contractual relations between them whatever. The city had no control or supervision over deceased in respect to his services as a fireman and had naught to do with engaging or discharging him. There was no legal duty or obligation on the part of one to the other. There was therefore no relation of master and servant or employer and employe existing between them as contemplated or defined by the statute."

*Badertscher* v. *Independent Ice Co.*, 55 Utah 100, 184 P. 181, is a case where the plaintiff was injured through negligence of the driver of a coal wagon. The question was whether the Coal Company, temporarily using the employees and equipment of the ice company, was the employer. The court held, quoting the last headnote:

"Where a coal company hired teams and teamsters from an ice company, the coal company *having the right to direct their movements*, such teamsters must, for the purpose of determining liability for their negligent acts in delivering coal, be deemed the servants of the coal company." (Italics added.)

*Murray* v. *Wasatch Grading Co.*, 73 Utah 430, 274 P. 940, 943, determines a similar question. The court had this to say:

"The adjudicated cases affecting the principles of the common law that determine when the relation of master and servant exists con-

sider five elements: (1) The selection and employment of the servant; (2) the payment of the servant's wages; (3) the power to discharge the servant; (4) the power to control the servant's actions; and (5) the person whose work is being done by the servant. It is quite generally held that the first three elements above enumerated are not necessary to the existence of the relationship of master and servant. 37 L. R. A. note pages 38 to 43; 1 Labatt, Mast. & Servt. (2d Ed.) pp. 56 to 58. As stated by the Supreme Court of the United States in the case of *Standard Oil Co.* v. *Anderson*, 212 U. S. 215, 29 S. Ct. 252, 53 L. Ed. 480: 'In many of the cases the power of substitution or discharge, the payment of wages and other circumstances bearing upon the relation are dwelt upon. They, however, are not the ultimate facts, but only those more or less useful in determining whose is the work and whose is the power of control.' "

Mr. Street, in 2 Foundations of Legal Liability, Contract, at page 468, after considering various reasons given as the basis for the axiom that the act of the servant is the act of the master, states:

"The proper criterion by which to determine whether in a given case the relation of master and servant exists is found in the right of the master to order and control the other in the performance of the work. A master is one who not only prescribes to the workman the end of his work, but directs, or at any moment may direct, the means also; or, as it has been put 'retains the power of controlling the work.' "

And again respecting the status of an independent contractor, page 471:

"The other limitation on the master's liability is found in those cases where an independent contractor is employed. Here the person who lets the contract is not liable for the torts of the servants employed by the contractor. The reason is obvious. The conductor, or one who lets the contract, has no control over employees of the contractor, and hence is not treated as their master. He is only concerned with the finished product of the labor, and the contractor, both in fact and in theory, is the master of those whom he employs."

Plaintiff cites many cases from this court wherein is discussed the distinction between an employer and independent contractor under specific contracts. All these cases are cited in *Gogoff* v. *Industrial Commission*, 77 Utah 355, 296

P. 229, and *Luker Sand & Gravel Co.* v. *Industrial Commission*, 82 Utah 188, 23 P. 2d 225. Those deci- ■ sions do not help the plaintiff to establish that the city firemen were employees of the company. Plaintiff's argument seems to be that since neither the city nor its firemen were independent contractors the firemen must have been employees. Measured by the test quoted above from Labatt, we must conclude that the evidence fails to furnish any ground for holding that the firemen were employees of the company. The only element of the five mentioned present here is that of benefit. There is evidence from which it could be found that Salt Lake City benefited by testing the apparatus which had been recently repaired. But benefit alone does not create the relationship of master and servant or necessarily impose liability for negligence on the beneficiary.

Tested another way, suppose the firemen who worked on the job had sued Auerbach Company for wages, could they recover? We do not see any legal basis for a recovery. Ordinarily when services are rendered by one person for another, and voluntarily and knowingly accepted, without more, the law will imply a promise to pay what ■ the services were reasonably worth. 28 R. C. L. 668. But here the service was rendered by the Fire Department rather than by the men individually. True, the men worked at pumping the water, but they worked under direction of the fire chief in their regular employment as firemen and were paid their regular wages by the city. The equipment used by them was owned by the city. The men merely responded to the direction of their superior officer in the Fire Department. It was one complete service rendered by the City Fire Department as an accommodation to the company. There is no evidence that the company either did or intended to do anything whatsoever in the way of control of the manner or means of doing the work.

The relationship indicated by the words "inde- ■ pendent contractor" also arises from contract.

"An independent contractor is one who has entered into a contract or upon employment to render service or do work for another, according to his own method, means, and manner of doing the work, and without being subject to the control, direction, or supervision of such other, except as to the result of the work or service." *Ludlow* v. *Industrial Commission*, 65 Utah 168, 235 P. 884, 890.

Here, at least prior to performance, there was no contract of employment between the company and the city. If, after performance there was an implied promise to pay the reasonable value of the service, the obligation would run to the city, as we have already indicated. There was no binding contract in advance. The Fire Department was under no obligation to do the work and could have withdrawn at any time without liability for breach of contract. The Fire Department, however, was an independent agency and performed the work free from direction or control of the company. There is nothing in the record from which can be inferred any right or power of control retained, or intended to be retained or asserted, by the company over the means or methods employed by the firemen in doing the work. If the city or its Fire Department be treated as an independent contractor, yet the company cannot be held liable for the performance of the city's employees unless the company retained or asserted control, or the right of control, over the details of the work, and could direct the men how it should be done. Where such right of control is retained by the employer of an independent contractor, there the relationship of master and servant exists between the employer and the employees of the contractor. 39 C. J. 38. There was no contract between the company and the city from which such a relationship could be inferred. Certainly, there was no contract with the board of commissioners of the city, and there was no showing that the fire chief had authority to bind the city with respect to any such contract.

Did the city loan its men and apparatus to the company for the purpose of pumping the water? If so, then the men

might become employees of the company while doing that work. This result might well follow even in the absence of an agreement to pay wages or compensation if there was a contract, express or implied, whereby the men █ became subject to the control or direction of the company. But there is an entire lack of evidence from which such an agreement or understanding could be implied. The rule respecting loan of employees by an employer to another employer is stated in *Aderhold* v. *Bishop*, 94 Okl. 203, 221 P. 752, 755, 60 A. L. R. 137, as follows:

"A general master may loan the service of his employee to another for a specified purpose and for a short period of time, in which case the individual to whom such general servants are let is the master, and responsible for their negligent acts so long as he exercises actual supervision over them. * * *

"In *Brady* v. *Chicago & G. W. R. Co.*, 114 F. 100, 52 C. C. A. 48, 57 L. R. A. 712, 11 Am. Neg. Rep. 546, it is said: 'The power of control is the test of liability, under the maxim respondeat superior. If the master cannot command the alleged servant, then the acts of the latter are not his, and he is not responsible for them. If the principal cannot control and direct the alleged agent, then he is not his agent.' "

We might ask if liability may be inferred from these facts. The company requested the Fire Department to pump the water. The department responded and did the work. The work was beneficial to the company. Because there was no contract, the company could have requested the defendant to desist at any time without liability to it for breach of contract. The request to do the work is consistent with either the relationship of master and servant or of independent contractor. So, also, was the doing of the work by the Fire Department. Had such request been made by the company to a commercial firm engaged in the business of pumping for hire, there would be little doubt that it was an independent contractor relationship. Based on the offer of employment and acceptance of the offer by coming to the premises and doing the work, the law would imply a promise to pay the reasonable value. The relationship between the company

and the men performing the service would not be one of master and servant unless the company reserved the right to control the manner of doing the work.

The mere fact of benefit or advantage is also consistent with either relationship. Here, however, benefit inured also to the city by reason of the opportunity to test its fire apparatus. There are, however, statements of law in some of the cases which, standing alone, seem to imply that benefit, without more, is sufficient to impose lia- ▪ bility under the doctrine of respondeat superior. A master's liability is usually sought to be fixed on him for the acts of his servant under the doctrine of respondeat superior. 39 C. J. 1268. That phrase in meaning is literally, "let the principal answer." 54 C. J. 726. A principal is liable for the acts of his agent on the same theory. 2 C. J. 848. In *Hall* v. *Smith*, Eng. C. L. 357, Chief Justice Best said:

"The maxim of respondeat superior is bottomed on this principle, that he who expects to derive advantage from an act which is done by another for him, must answer for any injury which a third person may sustain from it. This maxim was first applied to public officers by the statute of Westminster, 2 c. 11., from the words of which statute it is taken."

The above is quoted in 18 R. C. L. 787. A consideration of the whole paragraph in R. C. L., however, indicates that the test of liability is the power or right of control of the employee rather than merely the benefit from his services. The English case from which the quotation is taken is one wherein a person using the public street fell into an unguarded excavation placed there by the excavator or employees of the commissioner of sewers for the City of Birmingham. Under the statutes the suits with respect to the work might be brought against the clerks and officers of the commissioners. Plaintiff sued the persons who negligently left the trench open, and also the clerks of the commissioners. In holding the clerks not liable the court used

the language quoted above. Not anything was said with respect to independent contractors. Clearly, the clerks not only were not benefited by the work but had little or no control over the manner of doing it. The language of Chief Justice Best, just quoted, it used without citation of *Hall* v. *Smith*, supra, in *Barker* v. *Chicago, Peoria & St. L. R. Co.*, 243 Ill. 482, 90 N. E. 1057, 26 L. R. A., N. S., 1058, 134 Am. St. Rep. 382. That case held the railroad company liable for negligence of its servants resulting in injury to a mail clerk traveling on its train. The quoted language is used in discussing the exemption of public officers from responsibility for negligence of subordinates in the discharge of public duties. The court said the railroad company was not such a public officer, it being a contractor in carrying the mails for hire, and as such was liable for the negligence of its servants. *In Denver & R. G. R. Co.* v. *Gustafson*, 21 Colo. 393, 41 P. 505, 506, the company was sued for alleged negligence of a crossing flagman employed and his wages paid by another railroad company. The court said:

"Employment and payment of a person are not indispensable elements to charge one, as a master, for the negligence of such one who renders him service. When one knowingly and without objection receives the benefits of labor, or holds out to the public one as engaged in his service, he is liable, as a master, for the negligence of such servant, when the act or failure constituting the negligence comes within the apparent scope of the servant's employment, even though the person for whom the service is rendered has not employed or paid the servant. The facts of this case sufficiently show that the defendant knowingly availed itself of the services of the flagman for a long series of years, and held him out to the public as its servant."

The holding out of the flagman as its servant over a long series of years seemed to be one of the distinguishing features in that case.

In *Hill* v. *Morey*, 26 Vt. 178, defendant was held for the act of a volunteer servant in cutting timber on adjoining premises, but the evidence showed that the servant was doing the cutting of the timber for the defendant's benefit and

in his presence although he did not direct or advise the act to be done. The court said:

"The act being done, in the presence of the defendant, and for his benefit, and he not dissenting, in any manner, must be regarded, as assenting."

That an accommodation service of benefit to another without such other having the right of control of the details of performance does not impose liability is clearly stated in the illustration given by Mr. Justice Wolfe, speaking for the court, in *Fox* v. *Lavender*, 89 Utah 115, 56 P. 2d 1049, 1052, 109 A. L. R. 105:

"If I give a pedestrian a lift on my way downtown and when I arrive there find that he is going to the station and drive out of my way to take him to the station and an accident happens during the diversion from my business, that does not make me the agent of the pedestrian whom I accommodate. I still have the right of control during the journey of diversion. Therefore, the ultimate object of what is to be done at the end of the journey is not controlling, but simply a circumstance to throw light upon the question of whether there was the right of control during the journey. The inquiry must still be directed as to whether an agency existed in the operation of the car, or the more fundamental question of whether there was the right of control on the part of another during the time the car was operated."

There being no contract between the company and the city or the men of the Fire Department, either could have withdrawn without liability to the other. The company could have said to the firemen when they came to pump the shaft, "We do not want you to do the job, you may go," or the fire chief could have withdrawn the men at any time. It is argued that because the company could have directed the men to desist from doing the work at any time during its performance this gave it such power of control that it is liable for their negligence. That, however, is not the sort of control referred to in the cases which impose liability on the principal or master for the negligence of the servant. The kind of control necessary to impose liability is the right

of control over the details of the work, or the means or method of its performance. The fact that the fire chief could have called his men back to the station or could have refused to do the work at the request of the company but emphasizes the independence of the Fire Department, and tends to exclude any relationship of master and servant between the company and the firemen.

Plaintiff must fail on the second ground also. Her position, as stated in the brief, is that "Auerbach Company could not delegate the duty of pumping water from the elevator shaft to an independent contractor and thereby avoid liability for negligence in the performance of the work."

For the purpose of discussing this contention it may be assumed the city was an independent contractor. In any event, it acted independently as neither the city nor its employees were under the direction or control of the company with respect to the detail of performance.

The general rule that the employer of an independent contractor is not liable for an injury resulting to a third person from a tortious act committed by himself or his servant is subject to three exceptions:

"(1) where the injury was the direct result of the stipulated work; (2) where that work was intrinsically dangerous, and the injury was a consequence of the failure of the contractor to take appropriate precautions; (3) where the injury was caused by the nonperformance of an absolute duty owed by the employer to the complainant, individually or to the class of persons to which he belongs.

"It follows that, in any of these situations, the servants of the independent contractor are in effect the servants of the principal employer." 1 Labatt's Master & Servant, 2d Ed., 127.

Excellent monographs with respect to all three exceptions are found in 23 A. L. R. at pages 984, 1016 and 1084.

We are convinced the facts of this case cannot bring it under either exception of the rule of the immunity of an employer where an independent contractor does the work. The company did not stipulate the doing of the work in the manner which caused injury. The request to pump water

from the elevator shaft did not require any action with respect to running a hose, negligently or otherwise, from the curb across the sidewalk. In the absence of a showing to the contrary, we cannot assume that the company knew or anticipated that such use of the hose for the purpose of priming the pump was a necessary part of the procedure.

The job of pumping water out of the elevator shaft is not such work as, in the ordinary course of events, injurious consequences to pedestrians on a sidewalk 200 or 300 feet distant may be expected or reasonably anticipated, unless means were adopted by which such consequences may be prevented.

The applicable rule is stated in *Ohio Southern R. Co.* v. *Morey,* 47 Ohio St. 207, 24 N. E. 269, 7 L. R. A. 701, as follows:

"One who causes work to be done is not liable, ordinarily, for injuries that result from carelessness in its performance by the employes of an independent contractor, to whom he has let the work, without reserving to himself any control over the execution of it. But this principle has no application where a resulting injury, instead of being collateral and flowing from the negligent act of the employe alone, is one that might have been anticipated as a direct or probable consequence of the performance of the work contracted for, if reasonable care is omitted in the course of its performance. In such case, the person causing the work to be done will be liable, though the negligence is that of an employe of an independent contractor."

In 1 Shearman, Redfield, Law of Negligence, § 175, p. 414, is the following:

"The employer always remains responsible for the natural consequences of the act which he directs or contracts to have done, when it is done in the manner contemplated by the contract, or with ordinary care. If, therefore, a contractor is employed to do an unlawful act, e. g., to make an excavation in a highway, without authority from the proper public officer, or to create a nuisance, or do work, intrinsically dangerous to others, as employing a contractor to blast under dangerous circumstances, without proper safeguards, a person injured by such unlawful act, or by any result of it, may recover damages from either the contractor or the employer, or both. In such cases, the negligence is not that of the contractor alone; it is that of

the employer, in directing him to do an act which in its nature was wrongful."

The facts of this case do not bring it within such statement of the rule. The mere pumping of the water from an elevator shaft 200 or 300 feet from the sidewalk is not such a menace to pedestrians using the walk as would cast liability for its proper performance on the company where, as here, the operation was under the full and exclusive control of the City Fire Department. The company did not direct the work to be done in the manner employed, nor was it bound to assume it would be done in a negligent manner. The injury did not result from the pumping of the water from the elevator shaft, but from the negligent manner, if it be negligent, in which the fire hose, for the purpose of priming the pump, was left across the sidewalk without any warning. The city had six or seven times previously pumped the water from the elevator pit. It was not shown that the same method of priming the pump by stringing hose across the sidewalk from a hydrant was used on any of the previous occasions, or, if so, that such fact was known to the company or any of its officers or employees. An effort was made to show that Mr. Murphy, the superintendent of Auerbach Company, was familiar with the method theretofore used and that it was the same. Mr. Murphy denied such knowledge as to the details of the operation.

Cases somewhat similar on the facts in this case are *Jourdenais* v. *Hayden,* 104 Vt. 215, 158 A. 664, 665; *Langevin* v. *Schaller,* 163 App. Div. 52, 148 N. Y. S. 534; and *Whitehill* v. *Hartman Construction Co.,* 87 Misc. 184, 149 N. Y. S. 518. In the Vermont case the storekeeper engaged an electric company to install a sign over the sidewalk at its place of business. The employees of the electric company stretched a rope from the foot of the ladder to a ring in the sidewalk next to the building. The plaintiff, passing under the ladder, tripped and fell to her injury. The court decided:

"One is not, ordinarily, liable for the negligence of an independent contractor. That the Electric Company was such a contractor, that Allard and Severance were its servants since it hired them, and paid them, and had the sole right to direct the way in which they should go about this work, what facilities they should use and how they should secure the same, is all too plain to be seriously questioned. The transcript clearly shows that the defendant neither reserved nor exercised any control over the means they should adopt or the methods by which they should perform the work of their assignment. To be sure, he pointed out the place where the sign was to be located, and made some slight change in the location when difficulties were encountered in drilling the brick, but as to how they should get it up there, secure it, or wire it in, he said nothing. That was left entirely to them. Therefore they were not his servants. *Kelley's Dependents* v. *Hoosac Lumber Co. et al.*, 95 Vt. 50, 113 A. 818; *Le Blanc* v. *Nye Motor Co.*, 102 Vt. 194, 147 A. 265. So, if there was any negligence in stretching this rope across the sidewalk, it was nothing chargeable to the defendant. For that, redress must be sought against the workmen or their employer."

In *Langevin* v. *Schaller*, supra, the defendant, a baker, had his flour customarily delivered across the sidewalk into the second story of his building by means of a rope and pulley, the rope extending across the walk. When taut it was a few inches above the walk and when slack it lay on the walk and when slack it lay on the walk. Plaintiff passing along the sidewalk stumbled and fell. The court sustained a judgment for plaintiff against the baker notwithstanding the truckman delivering flour was an independent contractor and held defendant charged with the duty of seeing the rope was used with due regard to safety of pedestrians. It may be noted the rope and pulley apparatus was installed by defendant and the truckman's contract contemplated its use by him. In that respect the case is distinguishable from the Vermont case referred to above, and also from the following case from New York. In *Whitehill* v. *Hartman Construction Co.*, supra, a cable was stretched across the sidewalk for use in the operation of a donkey engine elevating materials for the construction of a building adjoining the sidewalk. The court held it was the negligence of the contractor, and not

the work contracted for, which created the danger. Therefore the contractor and not the contractee was liable. The contract did not call for the installation and use of the donkey engine. It was installed by and for the convenience of the independent contractor.

Here the hose stretched across the sidewalk was placed by the firemen as an incident to the doing of the work of pumping the water, and was not a requirement of the company, nor was it an instrumentality provided by it. The fact that the City Fire Department was not an independent contractor in the ordinary sense does not change the situation. Its status was similar to that of an independent contractor; that is, it undertook the work of pumping the shaft at the request of the company without control or direction being retained by the company as to the manner or means of doing the work.

Such questions as whether the conduct of the firemen constituted negligence, who would be liable, if anyone other than Auerbach Company, and whether plaintiff was guilty of negligence proximately contributing to her accident, are matters which need not now be discussed.

The judgment of the district court of Salt Lake county is affirmed. Costs to respondent.

HANSON, MOFFAT, WOLFE, and LARSON, JJ., concur.