493 P.2d 625

**Hal E. HOLMSTEAD, Plaintiff and Respondent,**

v.

**ABBOTT G. M. DIESEL, INC., Defendant and Appellant.**

**No. 12257.**

Supreme Court of Utah.

Jan. 25, 1972.

Worsley, Snow & Christensen, Reed L. Martineau, Salt Lake City, for defendant and appellant.

Howard & Lewis, Jackson Howard, Provo, for plaintiff and respondent.

CALLISTER, Chief Justice:

Plaintiff initiated this action against corporate defendant alleging that its employee, while operating his motor vehicle within the scope of his employment, negligently collided with plaintiff's vehicle, causing plaintiff injuries and property loss. Plaintiff did not join the employee, Gideon Allen, in this action, since they were in the process of negotiating a settlement. Allen was represented by his insurance carrier, Allstate Insurance, which procured from plaintiff a covenant not to sue for a consideration of $10,000, the maximum coverage under Allen's policy. Defendant moved for summary judgment on the ground that plaintiff's covenant not to sue the agent, Allen, operated as a matter of law to release the master or principal from liability.

Prior to the hearing of this motion, plaintiff filed an action against Allen and his insurance carrier seeking reformation of the covenant not to sue. Specifically, he alleged that Allstate, acting on behalf of its insured, Allen, agreed with plaintiff's counsel that plaintiff would specifically reserve his rights to proceed in his action against Abbott G. M. Diesel, Inc., and that through mutual mistake this reservation was omitted from the document executed by plaintiff. Allstate and Allen permitted a default to be taken against them in this action; however, counsel for plaintiff testified and presented documentary evidence indicating that Allstate and plaintiff's counsel had agreed that plaintiff would reserve his rights against the corporate employer.

The trial court granted the decree of reformation; the entire record of this related action is included in the instant case. Thereafter, defendant's motion for summary judgment was heard and denied; and this court granted defendant's petition for an intermediate appeal.

The relevant provisions of the Covenant Not to Sue were as follows:

In consideration of the sum of $10,000.00, . . . I do hereby covenant and agree never to make any demand or claim, or commence or cause or permit to be prosecuted any action at law or in equity, or any proceeding of any description, against Gideon Allen because of personal injury, . . . or loss of any kind that I have sustained or may hereafter sustain in consequence of an accident that occurred on or about the 6th day of December, 1968, at or near Lehi, Utah.

\* \* \* \* \* \*

I understand . . . that the payment above recited is made to terminate further controversy respecting all claims for damages that I have heretofore asserted or that I or my personal representatives might hereafter assert against Gideon Allen because of said accident.

I hereby reserve all of my rights against Abbott G. M. Diesel, Inc., including my right to pursue the lawsuit which was filed . . . on the 17th day of April, 1969 . . ..[1]

Under plaintiff's analysis of this case, which we reject, the master and servant or principal and agent are joint tort-feasors and a covenant not to sue one joint tort-feasor does not amount to a release; and, therefore, such an agreement does not discharge the other joint tort-feasor. A corollary to this rule is that there is no right of contribution between joint tort-feasors, and a covenant not to sue or a release with a reservation of rights made with one joint tort-feasor relieves him of liability not only directly to the injured party but also there is no legal basis whereby he may be held liable indirectly through contribution to his fellow joint tort-feasors. In other words, under plaintiff's theory of this case, the covenant not to sue relieved Gideon Allen of all liability, both directly and indirectly, since the corporate defendant as a joint tort-feasor would have no right to seek contribution from Allen.

On the other hand, defendant contends that a covenant not to sue in favor of an agent or servant operates as a release of a master or principal whose liability, if any, is wholly derivative.

■ A master's liability for the acts of his servant is under the doctrine of respondeat superior.[2] Under the doctrine of respondeat superior, the liability of the master to a third person for injuries inflicted by a servant in the course of his employment and within the scope of his authority is derivative and secondary, while that of the servant is primary, and absent any delict of the master other than through the servant, the exoneration of the servant removes the foundation upon which to impute negligence to the master. While the master may be jointly sued with the servant for a tort of the latter, committed within the scope of his authority or employment, they are not joint tort-feasors in the sense that they are equal wrongdoers without right of contribution, for the master may recover from the servant the amount of loss caused to him by the tort, including any sum he has been required to pay a third person on account of it; such payments made by the master, in the ab-

---

1. This final paragraph was added under the decree of reformation previously mentioned.

2. Gleason v. Salt Lake City, 94 Utah 1, 13, 74 P.2d 1225 (1937).

sence of fault on his part, are not made by him as a wrongdoer, but by reason of his obligation to answer for the act of the servant. On the other hand, the liability of the servant arises wholly because of his personal act in doing the wrong; it does not arise out of the relation of master and servant but exists upon the common law obligation that every person must so act or use that which he controls as not to injure another. If the master is required to respond to a third person in damages by reason of his liability under the doctrine of respondeat superior, he will be subrogated to the rights of the injured third person and may recover over from his servant who is primarily liable.[3]

. . . Duties, obligations, and liabilities may be of different order or degree. One may be a primary one, and another a secondary one. One may arise only in the event of a failure of the other. Both may exist concurrently as to a third party, but as between those liable or under duty, the one often grows out of the failure of the other. . . .

Subrogation is said to be a creation of equity for the purpose of effecting an adjustment between parties so as to secure ultimately the payment or discharge of a debt by a person who in good conscience ought to pay for it.[4]

■ In the instant action, if the corporate defendant he compelled to respond in damages to plaintiff, it would be subrogated to plaintiff's claim and could recover thereunder from its servant, Gideon Allen. However, the covenant not to sue specified that plaintiff understood that the agreement was to terminate further controversy respecting all claims for damages which plaintiff had asserted or that he or his personal representatives might thereafter assert against Gideon Allen. Plaintiff has relinquished his claim against the servant and thus impaired defendant's right of subrogation.

■ It is true that plaintiff and the servant cannot destroy defendant's right of indemnity without its consent and therefore defendant is still entitled to

---

3. Jacobsen v. Parrill, 186 Kan. 467, 351 P.2d 194 (1960); Simpson v. Townsley (CA 10th, 1960), 283 F.2d 743, 92 A. L.R.2d 526; American Southern Insur. Co. v. Dime Taxi Service, Inc., 275 Ala. 51, 151 So.2d 783 (1963); Holcomb v. Flavin, 34 Ill.2d 558, 216 N.E.2d 811 (1966); Stewart v. Craig, 208 Tenn. 212, 344 S.W.2d 761 (1961); Continental Casualty Co. v. Phoenix Construction Co., 46 Cal.2d 423, 269 P.2d 801, 57 A.L.R.

2d 914 (1956); Hamm v. Thompson, 143 Colo. 298, 353 P.2d 73 (1960); Bacon v. United States (CA 8th, 1963), 321 F.2d 880.

4. Salt Lake City v. Schubach, 108 Utah 266, 287, 159 P.2d 149, 158, 159 (1945); also see Beaver County v. Home Indemnity Co., 88 Utah 1, 34–36, 52 P.2d 435 (1935).

indemnity.[5] However, as the court observed in Simpson v. Townsley [6] the covenant not to sue would be wholly abortive of its intended object and purpose if it went no further than to protect the employee against a direct action by the injured party but afforded no protection against an action over by his employer. If the covenant be so narrowly construed, the payment made as consideration would constitute no more than a credit on the amount which the injured person might ultimately recover under a judgment, and the employee would remain liable for the remainder. The court determined that the covenant not to sue was intended to protect the employee against liability, direct or indirect, for damages resulting to the injured party from the accident. The court concluded that the covenant not to sue constituted a complete exoneration of the employee and removed any foundation upon which to impute negligence to the employer.

▉ Since plaintiff has not claimed, in the instant action, that the covenant not to sue was to protect Gideon Allen solely against direct liability to plaintiff,[7] and the specific language of the agreement militates against such narrow interpretation, we are compelled to conclude that there were no rights against defendant to be reserved. Defendant's liability was merely derivative and secondary; the exoneration of servant, Allen, prevented the imputing of his negligence to defendant.

This cause is remanded to the trial court with an order to grant defendant's motion for summary judgment. No costs are awarded.

HENRIOD and CROCKETT, JJ., concur.

ELLETT, Justice (Dissenting):

I am unable to agree with the holding of the main opinion. While it is true that the agent and the principal are not joint tort-feasors, yet they are jointly liable, the agent because of his wrongful conduct and the principal because of a rule of law (respondeat superior).

There is a split in the authorities as to whether a release of or a covenant not to

---

5. See Restatement of Restitution, Sec. 96, p. 418 and Commenta, p. 419.

6. Note 3, supra.

7. This position is consistent with plaintiff's complaint for reformation of the covenant not to sue and the evidence and testimony adduced at the hearing thereon, where it was indicated that the agreement to reserve plaintiff's rights was solely between Allstate Insurance and plaintiff's counsel. There were no allegations or proof that Allen consented to the reservation. Since Allstate had paid to the policy limits, the insurer had no authority to bind the assured by a compromise beyond the policy limits. Brown v. Guarantee Insurance Co., 155 Cal.App.2d 679, 319 P.2d 69, 74, 66 A.L.R.2d 1202 (1957).

sue one primarily liable will also release another who is jointly liable for the same tort. The annotation in 20 A.L.R.2d at page 1044 lists Georgia, North Carolina, and Ohio as holding that the release of the agent will also release the principal. The annotation lists California, Illinois, Kentucky, and Michigan as holding that it does not release the principal. In addition to the jurisdictions there cited, there are Federal cases holding that the liability of the principal is not affected by a release of the agent.

The case of United States v. First Security Bank, 208 F.2d 424, 42 A.L.R.2d 951, was decided under Utah Law. The plaintiff there sued the United States under the Tort Claims Act after giving a covenant not to sue the negligent agent. The identical argument was there made by the Government as that adopted in the majority opinion in this case. The Court of Appeals (10th Cir.) rejected that argument and permitted the judgment against the Government to stand.

The case of Williams v. Marionneaux, 240 La. 713, 124 So.2d 919 (1960), permitted the employer to be held where an agreement to save the employee harmless was made.

In Holcomb v. Flavin, 62 Ill.App.2d 245, 249, 210 N.E.2d 565, 567 (1965), the plaintiff gave a covenant not to sue the agent, then sued the principal. There was a sum-

mary judgment given in the trial court for the defendant, which was reversed on appeal, the court there saying:

We differ with the conclusion reached by the trial court. The fallacy common to the cases above cited is best illustrated by the language of the opinion in Bacon v. United States wherein the court at page 884, of 321 F.2d, stated that when the servant is not liable, the master should not be liable, and that it matters little how the servant was released by liability. In our opinion it matters greatly how the servant's liability was extinguished. Where the master's liability rests solely on respondeat superior, if the servant is exonerated by trial on the merits, then, of course, the master cannot be held liable, but there is no logical or legal basis for extending the rule to situations where a servant terminates his liability by obtaining a covenant not to sue. . . .

The case of Ellis v. Jewett Rhodes Motor Company, 29 Cal.App.2d 395, 84 P.2d 791 (1938), was one where the plaintiff gave a covenant not to sue the agent, the driver of a motor vehicle, and then sued the principal. The judgment against the principal was affirmed on appeal.

In Boucher v. Thomsen, 328 Mich. 312, 321, 322, 43 N.W.2d 866, 870 (1950), there was a suit filed by the plaintiff against the principal and the agent, who was driver of

a motor vehicle. While the action was pending, a covenant not to sue was given to the agent. The trial court dismissed as to the principal, and the Supreme Court reversed, saying:

> We think the above decisions indicate the correct rule of law to be applied in the case at bar. The express language of the covenant leaves no question as to what the parties thereto actually intended. If liability on the part of defendant Franck is enforced, he may assert, and perhaps maintain, a claim that he is entitled to reimbursement from Thomsen and Plemel. As before pointed out, it must be assumed that the parties to the covenant had such possible situation in mind when they executed their agreement. We are not entitled to speculate as to their reasons or motives in the matter, but they have not sought to void the undertaking and presumably it is in accordance with their deliberate conclusions as to the proper course to follow. It is our conclusion that the covenant may not be given the effect of precluding the prosecution of the action against the defendant Franck. His motion to dismiss should have been denied.

It seems to me that the better reasoned cases permit a recovery against the principal, and in Utah such recovery is permitted by statute. Section 15–4–4, U.C.A.1953, provides clearly that the release of "one or more of joint or of joint and several obligors, shall not discharge co-obligors against whom the obligee in writing and as part of the same transaction as the release or discharge expressly reserves his rights; . . . ."

There is no distinction in this statute between those who are primarily liable and those who are secondarily liable. The statute simply provides that an obligee can do exactly what the plaintiff in the instant matter did do and this without losing his rights to sue the co-obligor.

The plaintiff did not really release the agent. He merely covenanted never to sue him or to cause him to be sued. If it be thought that by suing the principal a cause of action arises in favor of the principal and against the agent, still the agreement is between the plaintiff and the agent, and this defendant has no rights under it. The agent specifically agreed that the plaintiff was reserving all of his rights against defendant herein under the cause of action which had then been pending for some seven and a half months.

The agent must have known that he might be called upon to reimburse his principal in case the plaintiff might recover and collect a judgment in excess of the settlement figure. For reasons best known to himself, he assumed this risk. It may be that he thought his principal would never be called upon to satisfy any judgment rendered against him. It may be that he

thought the plaintiff could not recover at all. It may be that he thought defendant's insurance carrier (if any it has—and which employer does not have one) would settle with the plaintiff as did his own carrier. At any rate, he was willing to settle his liability, if any there was, by allowing his insurance carrier to furnish the money for the covenant given to him.

Even if a judgment is rendered against the defendant in excess of the amount of the settlement with the agent and it has to pay that excess judgment, there is no subrogation by defendant to the plaintiff's rights against the agent. All rights of the plaintiff would be settled by the payment of the judgment. The innocent principal would simply have an action against the errant agent for reimbursement for any sum which it might be called upon to pay because of the wrongdoing of the agent.

If the covenant not to sue be interpreted to hold the plaintiff responsible for causing an action to be filed against the agent, surely the principal (this defendant) should not be concerned with whether or not the agent sues the plaintiff for breach of covenant. That simply is no concern of this defendant.

The agent by his agreement was willing to take the risk of reimbursing this defendant, and he is not now evidencing any concern about it. I think this court should not concern itself about the possibility that the agent might have to pay the defendant in some future action. I, therefore, would follow the plain wording of the statute and then in the words of the great Bard say, "Mischief, thou art afoot, take thou what course thou wilt." [1]

TUCKETT, J., concurs in the dissenting opinion of ELLETT, J.

---

1. Julius Caesar, Act 3, Scene 2.