**Miriam NELSON, guardian ad litem on behalf of Mark HIRSCHFELD, a minor, Plaintiff and Appellant,**

v.

**The CORPORATION OF the PRESIDING BISHOP OF the CHURCH OF JESUS CHRIST OF LATTER–DAY SAINTS and Darrin Crabtree, Defendants and Appellee.**

No. 950259.

Supreme Court of Utah.

March 25, 1997.

David B. Havas, Christopher L. Shaw, Douglas B. Thomas, Ogden, for Nelson.

Paul H. Matthews, Thomas D. Walk, Val D. Ricks, Salt Lake City, for the Church.

Lee Henning, Salt Lake City, for Crabtree.

DURHAM, Justice:

This case requires us to decide whether the release of a tort-feasor in a negligence action automatically releases the tort-feasor's "master" under principles of vicarious liability. We hold that it does not.

Plaintiff Mark Hirschfeld was seriously injured at a church youth activity when his adult supervisor, Darrin Crabtree, fell on him. Plaintiff brought suit against Crabtree, alleging negligence, and also against the Church of Jesus Christ of Latter-day Saints (the Church) under the doctrine of respondeat superior. The parties have stipulated that at the time the injury occurred, Crabtree was acting within the scope and course of his authority as a volunteer agent of the Church.

Plaintiff subsequently settled with Crabtree by entering into a "General Release and Hold Harmless Agreement" (the agreement), which required Crabtree to pay plaintiff $100,000. The agreement stated that plaintiff did not intend to release the Church and specifically reserved all claims against the Church, but acknowledged that plaintiff assumed the risk that a court would decide, as a matter of law, that the release of Crabtree also immunized the Church from claims of respondeat superior. The agreement also included the following clause: "The Parties further agree that this entire agreement is contingent upon the enforceability of the promise by the L.D.S. Church that it will not pursue indemnity against Darrin Crabtree."

Following the release of Crabtree, the Church moved for summary judgment, arguing that the agreement released it, as a matter of law, from vicarious liability. The trial court granted the motion, and plaintiff appeals.

Plaintiff argues that the trial court erred in holding that the release of a tort-feasor servant automatically releases a master from vicarious liability. Plaintiff cites primarily section 78–27–42 of the Liability Reform Act (the LRA), which provides, "A release given by a person seeking recovery to one or more defendants does not discharge any other defendant unless the release so provides." Plaintiff contends that this language, combined with our prior ruling in *Krukiewicz v. Draper*, 725 P.2d 1349 (Utah 1986), interpreting a similar section under the prior Comparative Negligence Act (the CNA), allows plaintiff to maintain his claim against the Church. In *Krukiewicz*, we interpreted section 78–27–42 of the CNA: "A release by the injured person of one joint tort-feasor ... does not discharge the other tort-feasors." *Id.* at 1350. We ultimately held that a vicariously liable employer was a "joint tort-feasor" under the statute, such that the release of the employee did not release the employer. *Id.* at 1351.[1] We recognized that an employer's liability under respondeat superior "arises

not as a result of any actual negligence by the employer," but because the employer reaps the benefits of the employee's acts and may more easily spread the cost of accidents. *Id.* at 1351. Therefore, " '[a]lthough the employer and employee are not [common law] tort-feasors, they are nonetheless each obligated for the same thing—total reparation of the damages to the victim.' " *Id.* (quoting *Sampay v. Morton Salt Co.,* 395 So.2d 326, 328 (La.1981)). As a result, we held that because the master and the servant are equally liable, both are tort-feasors under the statute and the servant's release does not release the master.

The Church, however, points out that the LRA, which replaced the CNA, no longer refers to liable parties as joint tort-feasors, but as "defendants." Section 78–27–37 defines defendant:

(1) "Defendant" means a person, other than a person immune from suit ..., who is claimed to be liable *because of fault* to any person seeking recovery.

(Emphasis added.) The section then defines fault:

(2) "Fault" means any actionable breach of legal duty, act, or omission proximately causing or contributing to injury or damages sustained by a person seeking recovery, including negligence in all its degrees, contributory negligence, assumption of risk, strict liability, breach of express or implied warranty of a product, products liability, and misuse, modification, or abuse of a product.

The Church therefore argues that it is not a "defendant" because vicarious liability does not attach "because of fault." It cites passages from *Krukiewicz*, 725 P.2d at 1351, and *Holmstead v. Abbott G.M. Diesel, Inc.,* 27 Utah 2d 109, 493 P.2d 625, 627 (1972), where we stated that a master liable solely on the basis of respondeat superior is not personally at fault. The Church argues that we must follow the *Holmstead* decision, which held

---

1. Section 78–27–40(3) defined "joint tort-feasor" in terms of traditional joint and several liability law:

As used in this section, "joint tort-feasor" means one of two or more persons, jointly or

severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them.

that under the common law, a plaintiff's release of a tort-feasor employee released the vicariously liable employer despite the fact that the plaintiff reserved the right to sue the employer. *Id.* 493 P.2d at 628. *Holmstead* was based primarily on the notion that the employer and the employee were not joint tort-feasors because the employer's liability to the plaintiff was "derivative and secondary," and thus the "exoneration of the servant removes the foundation upon which to impute negligence to the master." *Id.* 493 P.2d at 627.

■ Notwithstanding the reliance of the parties in their briefs on competing interpretations of the LRA,[2] we conclude that this case may be resolved pursuant to the Joint Obligations Act, Utah Code Ann. §§ 15–4–1 to –5. That provision operates to preserve plaintiff's claim against the Church.[3]

Section 15–4–4 of the Joint Obligations Act, similar to section 78–27–42 of both the CNA and the LRA, provides that the release of one obligor does not discharge co-obligors against whom the obligee in writing expressly reserves his rights.[4] Section 15–4–1 defines an "obligor" as "a person liable for a tort" and an "obligee" as "a person having a right based on a tort." Plaintiff claims that both Crabtree and the Church are liable to him for a tort: Crabtree for his harmful acts conducted within the scope of his authority as a volunteer for the Church, and the Church under the doctrine of respondeat superior for Crabtree's actions. Indeed, the main import of our decision in *Krukiewicz* was that a vicariously liable employer is *liable for a tort* and thus is considered a joint tort-feasor. Accordingly, both Crabtree and

the Church are "obligors." Therefore, because the release given Crabtree by plaintiff expressly reserved all claims against the Church, section 15–4–4 of the Joint Obligations Act governs, and plaintiff may still pursue this action against the Church.

■ Although plaintiff still has a claim against the Church, plaintiff may not recover a windfall by receiving more than his actual damages. Generally, if the servant is released after paying the full amount of plaintiff's damages, all liability is satisfied and there is no cause of action against the master. *See Knutson v. Morton Foods, Inc.,* 603 S.W.2d 805, 807 (Tex.1980) ("The fact that an employee has been released in a settlement has no bearing on the continued liability of the employer unless the settlement is in full satisfaction of plaintiff's claims against both the employee and the employer." (footnote omitted)). Moreover, under section 15–4–3 of the Joint Obligations Act, any amount received by one obligor is to be credited against any amount owed by the rest. *See Green v. Lang,* 115 Utah 528, 206 P.2d 626 (1949). In the instant case, however, plaintiff asserts that his damages have not been satisfied. Until both sides present evidence on this issue and a jury determines the amount of damages, that question remains open. If a jury does hear the facts of this case and finds negligence and damages of more than $100,000, the Church, if found liable pursuant to respondeat superior, will be responsible for only the difference between the total damage figure and the amount Crabtree paid pursuant to the agreement with plaintiff. If the jury finds damages in an amount less

**2.** Plaintiff argues that the Church's fault, for purposes of the LRA, is imputed from the acts of Crabtree. Thus, they contend that the Church is a "defendant" under the LRA. Because we find, however, that the Joint Obligations Act specifically addresses this issue, we need not determine the merits of plaintiff's interpretation.

**3.** We recognized in *Krukiewicz* that section 78–27–42 of the CNA was a *"pro tanto"* repeal of section 15–4–4 of the Joint Obligations Act. To the extent that the LRA still addresses regular co-defendants who are liable because of fault, the LRA will supersede or act as a *pro tanto* repeal of section 15–4–4 as to those defendants. However, since the LRA does not address vicariously liable

parties, section 15–4–4 now applies to those parties.

**4.** Section 15–4–4 specifically provides:

[T]he obligee's release or discharge of one or more of several obligors, or of one or more of joint or of joint and several obligors, shall not discharge co-obligors against whom the obligee in writing and as part of the same transaction as the release or discharge expressly reserves his rights; and in the absence of such a reservation of rights shall discharge co-obligors only to the extent provided in Section 15–4–5.

than $100,000, the Church will owe nothing, regardless of its liability.

ZIMMERMAN, C.J., concurs in Justice DURHAM's opinion.

HOWE, Justice, concurring:

I concur but write to briefly refute the assertion made in the dissenting opinion that the LRA supersedes the provisions of the Joint Obligations Act (JOA) with respect to tort liability. The LRA abolished only the joint and several liability of "defendants" and made each "defendant" severally liable for his own negligence. "Defendant" is defined in section 78–27–37 as "any person not immune from suit who is claimed to be liable because of fault to any person seeking recovery." Both the majority and dissenting opinions correctly observe that an employer is not a "defendant" because it is free from fault. But the LRA does not abolish, or even address, joint and several liability in other contexts such as in respondeat superior.

Under the principle of respondeat superior, the employer and its employee are jointly and severally liable for the negligent torts of the employee in the course of employment. This well-established rule was not disturbed by the enactment of the LRA. The reach of the LRA was only to abolish the joint and several liability of "defendants." Thus the dissenting opinion sweeps too broadly when it announces that the LRA completely removed joint and several liability "from Utah's tort scheme" and rendered the JOA "wholly inapplicable insofar as it purports to relate to tort liability." It is true that the LRA abolished the joint and several liability of "defendants," but that does not affect an employer who, being only vicariously liable, is not a "defendant." There is nothing in the LRA which alters the traditional notions of employer-employee liability, including the principle of respondeat superior.

However, if the dissenting opinion is correct that the LRA completely removed joint and several liability "from Utah's tort scheme," an employer is then severally liable because the negligence of the employee is imputed to it. Under section 15–4–4 of the JOA, the release of one several obligor does not discharge a co-obligor against whom rights are reserved in writing.

RUSSON, Justice, dissenting:

I respectfully dissent. The majority holds that pursuant to the Joint Obligations Act ("JOA"), Utah Code Ann. §§ 15–4–1 to –7, Nelson's release of Crabtree from the litigation does not also discharge his employer, the Church. However, the JOA is inapplicable in this case because its provisions relating to tort liability substantially conflict with, and are thus entirely superseded by, the Liability Reform Act ("LRA"), Utah Code Ann. §§ 78–27–37 to –43.

The majority argues that section 15–4–4 of the JOA serves to validate Nelson's release of Crabtree and its attempted reservation of rights against the Church. Initially, it is important to note that Nelson failed to raise this argument in the lower court, and no "extraordinary circumstances" have been shown to justify review of the issue now. *See Standard Fed. Sav. & Loan Ass'n v. Kirkbride*, 821 P.2d 1136, 1139 (Utah 1991). However, even if Nelson had preserved the issue for appeal, the JOA does not apply to this case.

The JOA, originally effected in 1929, purports to define the relationships between "joint obligors" in the context of both contract and tort law. The JOA is premised on the existence of joint and several liability in tort law. By its own terms, section 15–4–4 of the Utah Code, upon which the majority relies, relates only to "several obligors" or "joint ... or ... joint and several obligors." [1]

---

1.  Section 15–4–4 of the Utah Code states in pertinent part, with emphasis added, as follows:

    [T]he obligee's release or discharge of one or more of *several obligors*, or of one or more of *joint* or of *joint and several obligors*, shall not discharge co-obligors against whom the obligee in writing and as part of the same transac-

tion as the release or discharge expressly reserves his rights....

Additionally, section 15–4–1 of the Utah Code defines the operative terms of the JOA as follows, with emphasis added:

    In this chapter:

      (1) "Obligation" includes a liability in tort and contractual obligations;

However, joint and several liability was abolished from Utah tort law when the LRA became effective in 1986. We stated in *Sullivan v. Scoular Grain Co.*, 853 P.2d 877 (1993), that "the purpose of the [LRA] was, among other things, '*abolishing joint and several liability*'" in tort law. *Id.* at 880 (emphasis added) (quoting Preface, 1986 Utah Laws ch. 199); *accord Krauss v. Utah State Dep't of Transp.*, 852 P.2d 1014, 1018 (Utah.Ct.App.1993); *see also* Utah Code Ann. §§ 78–27–38(3) & –40(1). Justice Howe, in his concurring opinion, suggests that the LRA only *partially* abolished joint and several liability. This is plainly incorrect, however. Neither this court's previous opinions nor the legislative history of the LRA restricts the scope of the abolishment of joint and several liability in the way Justice Howe suggests. On the contrary, both clearly imply that the abolishment is total. Thus, by completely removing joint and several liability from Utah's tort scheme, the LRA, which is the Utah legislature's latest word on the subject, has implicitly repealed the JOA and rendered it wholly inapplicable insofar as it purports to relate to tort liability.[2]

Because the JOA clearly does not apply in this case, it is necessary to discuss whether the LRA applies, as Nelson argues, to validate Nelson's release of Crabtree and reservation of rights against the Church. Clearly, it does not. Nelson contends that the LRA's definition of "defendant" includes a vicariously liable employer. In doing so, Nelson relies in part upon *Krukiewicz v. Draper*, 725 P.2d 1349, 1352 (Utah 1986), a case dealing with the Comparative Negligence Act ("CNA"), which predated the LRA. In *Krukiewicz*, this court held that although such employers committed no wrong and thus were not common law joint tort-feasors, they were nevertheless joint tort-feasors under the CNA. However, the repealed CNA

"define[d] a joint tort-feasor in terms of liability, not negligence." *Id.* at 1351. Its replacement, the LRA, on the other hand, speaks in terms of "defendants" instead of "joint tort-feasors" and defines "defendant" in terms of fault, not liability. *See* Utah Code Ann. § 78–27–37(1). Because the CNA dealt not in terms of "fault" but rather in terms of liability, the *Krukiewicz* court was able to hold that vicariously liable employers were "joint tort-feasors" under the CNA. For these reasons, the *Krukiewicz* holding under the CNA is inapplicable.

Nelson also asserts that vicariously liable employers are "defendants" under the LRA because the fault of the servant is imputed to the master. However, this court has established that employers are liable "solely because of the employer's employment of the employee." *Krukiewicz*, 725 P.2d at 1351. While the employer may inherit *liability* because of its relationship with the employee, the employer does not thereby also inherit the employee's tortious *acts*. Prosser and Keeton state that it is liability, not negligence or fault as Justice Howe suggests in his concurring opinion, that is imputed to the employer: "The foundation of the action is still negligence, or *other* fault, *on the part of [the employee or servant]*; and all that the law has done is to broaden the *liability* for that fault by imposing it [i.e., the liability] upon an additional, albeit innocent, defendant." W. Page Keeton et al., *Prosser and Keeton on The Law of Torts* § 70, at 499 (5th ed. 1984) (emphasis added).

The LRA's use of the term "defendant" does not encompass employers who are not at fault but rather are only derivatively liable for their employees' negligent acts. Therefore, the LRA's mandate that a release of one "defendant" not discharge any other "defendant" does not apply to the employer who is only vicariously liable.

---

(2) "Obligee" includes a creditor and a person having a right based on a tort;
(3) "Obligor" includes a debtor and a person liable for a tort;
(4) "Several obligors" means obligors *severally bound* for the same performance.

**2.** It is further instructive to note that even in *Holmstead v. Abbott G.M. Diesel, Inc.*, 27 Utah 2d 109, 493 P.2d 625 (Utah 1972), *overruled on other*

*grounds, Krukiewicz v. Draper*, 725 P.2d 1349 (Utah 1986), this court refused to apply section 15–4–4 of the JOA to validate language in a release that purported to reserve all rights against an employer liable only vicariously, even though the dissent brought the statute to the court's attention. 27 Utah 2d at 114, 116, 493 P.2d at 628, 630.

The CNA "provided for joint and several liability, that is, each defendant was liable to the plaintiff for the full amount of the plaintiff's damages." *Stephens v. Henderson*, 741 P.2d 952, 953 (Utah 1987). In 1986, the legislature repealed the CNA and replaced it with the LRA, which, as we have already shown, eliminated the harsh results of joint and several liability and instead provided that "no defendant is liable to any person seeking recovery for any amount in excess of the proportion of fault attributable to that defendant." Utah Code Ann. § 78–27–38. It provided a statutory scheme for apportioning fault among negligent "defendants," assuring that no "defendant" will be liable for the fault of any other, and thereby eliminating "one of the major evils of joint and several liability." *See Sullivan*, 853 P.2d at 880. An employer who is liable only vicariously because of the fault of its employee simply has no fault of its own to apportion under the LRA. For this reason, of course, juries are not asked to determine separately the negligence of the employee and his or her employer. This apportionment would be impossible because the employer is not negligent.[3] Furthermore, a plaintiff would not stand for such a separate determination, even if possible, because it would dilute the negligence of the employee, the only truly negligent defendant, to the plaintiff's own detriment. The truth of the matter is that even though the employer is *not at fault*, it is still *liable* for the fault of its employee who proximately causes damage to a third party. It is informative that Model Utah Jury Instruction 25.6 (1993) provides:

> In order to find that an employer is *liable* for the act or omission of an employee, you must find that the employee was acting within the scope of the employee's employment authority at the time of the act or omission.

(Emphasis added.) The employer's liability, however, is restricted to the fault apportioned to its employee.

The LRA provides, "A release given by a person seeking recovery to one or more defendants does not discharge any other defendant unless the release so provides." Utah Code Ann. § 78–27–42. The LRA then defines "defendant" as "a person ... who is claimed to be liable because of fault." Utah Code Ann. § 78–27–37(1). However, an employer who is liable only vicariously has neither negligence nor fault and is liable "solely because of the employer's employment of the employee." *Krukiewicz* at 1351. Thus, an employer liable only vicariously has committed no "actionable breach of legal duty, act or omission" and therefore has no fault and is not a "defendant" for apportionment purposes under the LRA. *See* Utah Code Ann. § 78–27–37(2).

Since neither the JOA nor the LRA applies in this case, the Church's liability depends solely upon the common law doctrine of respondeat superior—that is, its employment relationship with Crabtree—and not because of any fault of its own. In *Holmstead*, this court held that under the common law doctrine of respondeat superior, a covenant not to sue between an employee and an injured third party served to discharge the employer even though the covenant not to sue reserved rights against the vicariously liable employer. 27 Utah 2d at 114, 493 P.2d at 628. The court reasoned that because the employer's "liability was merely derivative and secondary; the exoneration of [the] servant ... prevented the imputing of his negligence to [the employer]." *Id.* Inasmuch as the common law doctrine of respondeat superior governs this case, this court should hold that the release between the plaintiff and Crabtree discharges the Church.

STEWART, Associate C.J., does not participate herein.

---

3. Of course, where separate negligence is alleged on the part of the employer, such would be determined by the jury. Of concern here is only the circumstance where an employer is derivatively liable under the doctrine of respondeat superior.